IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KIRK NORTHUP #1469152 | § | |
| v. | § | CIVIL ACTION NO. 6:11cv222 |
| OLIVER BELL, ET AL. | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>
<u>AND ENTERING FINAL JUDGMENT</u>

The Plaintiff Kirk Northup, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Northup sued 40 defendants in 13 separate claims. He raised allegations concerning a fire on the cellblock on July 15, 2009, allegedly improper handling of legal and personal mail, meals not amounting to 2000 calories per day, lack of sanitation in the kitchen, inadequate supervision of the showers, inadequate space in the dayroom, inadequate square footage in the cells, inadequate maintenance of the plumbing and electrical fixtures, denial of hot water in the cells, inadequate staffing, electrical and safety hazards, cellmates exercising authority over him, and "gang control of the Beto Unit."

After review of the pleading and testimony at an evidentiary hearing, the Magistrate Judge issued a lengthy Report detailing Northup's claims and recommending that the lawsuit be dismissed as frivolous. Northup filed objections to the Magistrate Judge's Report on June 21, 2012.

With regard to the claim regarding the fire on the cell block, the Magistrate Judge determined that Northup showed no harm as a result of his brief exposure to the smoke caused by

the burning of mattresses, and that while contemporary standards of decency have evolved to prohibit long-term exposure to second-hand tobacco smoke, as in Helling v. McKinney, 509 U.S. 25, 33 (1993), there was no showing that transitory exposure to smoke lasting no more than a few hours, resulting in no harm beyond coughing, amounted to a constitutional violation. The Magistrate Judge also determined that Northup's complaint that his grievances on this issue were not answered to his satisfaction failed to set out a constitutional claim.

In his objections, Northup complains that the Magistrate Judge held that second-hand cigarette smoke "should be considered and compared to toxic plastic polyurethane smoke / soot caused by TDCJ-ID mattresses." He asserts that the Magistrate Judge "has placed an iron curtain between the plaintiff and the Constitution of the United States to make a comparison of second hand smoke of cigarettes to the toxic plastic polyurethane smoke the plaintiff ingested on July 15, 2009."

Northup does not assert that he suffered any harm, beyond coughing, as a result of his transitory exposure to the smoke, nor does he object to the Magistrate Judge's conclusion that he in fact suffered no harm. Northup further does not object to the Magistrate Judge's determination that his complaints concerning his grievances on this issue did not set out a constitutional claim. Northup's objection on this point is without merit.

In his legal mail claim, Northup asserted that three letters which qualified as "special correspondence" were opened outside of his presence. These were a letter from the FBI and two letters from an attorney in California. The Magistrate Judge cited Fifth Circuit case law saying that a claim that legal mail was opened outside of a prisoner's presence, in violation of prison regulations, did not by itself set out a constitutional violation, see Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993), and determined that Northup's claim lacked merit for this same reason.

In his objections, Northup says that either the prison officials' actions violated clearly established law, or the TDCJ mail policies are themselves unconstitutional. As the Magistrate Judge set out, the clearly established law provides that the opening of legal mail outside of a prisoner's presence does not itself violate the Constitution. Northup has not shown that the TDCJ policies are

unconstitutional. As the Magistrate Judge pointed out, only three of Northup's letters were opened over a two-year period, indicating that these incidents were isolated episodes rather than a pattern of interference. Northup's claim on this point is without merit.

In his third claim, Northup asserted that TDCJ officials pass out mail without checking inmate ID's, so that any inmate can obtain any other inmate's mail. He said that this had happened to him once, when his mail was given to an inmate named Nelson, who then delivered it to him. Northup argued that this violated 18 U.S.C. §1701, a federal criminal statute prohibiting interference with mail.

The Magistrate Judge stated that Northup had failed to show any harm as a result of the alleged practice of handing out inmate mail without checking ID's, citing Michael v. Arpaio, slip op. no. 06-2560-PHX-DGC, 2006 WL 349991 (D. Ariz., December 5, 2006), in which the Arizona district court rejected a claim that guards handed out inmate mail without checking ID's because the plaintiff failed to show any harm. The Magistrate Judge concluded that Northup's speculative assertions of harm that might occur were not sufficient to support a Section 1983 claim and that his invocation of a criminal statute lacked merit because he had no right to have someone else criminally prosecuted. Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1991).

In his objections, Northup poses the hypothetical question of whether the Magistrate Judge allows his neighbors to obtain, open, and read his family's personal mail. Aside from being entirely improper, this objection fails to address the point that Northup has not shown that anyone else ever opened and read his mail, much less that he suffered any other harm from the alleged actions. His objection on this point is without merit.

In his claim of denial of an adequate diet of 2000 calories per day, Northup says that he lost 50 pounds since coming to the Beto Unit. The Magistrate Judge noted that according to Northup's medical records, he weighed 240 pounds in May of 2009 and 190 pounds in December of 2011; however, in January of 2012, the latest entry in the medical records, Northup weighed 215 pounds, giving him a net loss of 25 pounds in 32 months. The Magistrate Judge also stated that

although Northup had filed over 60 sick call requests since May of 2009, he did not mention weight loss in any of them, nor did he ever discuss concerns about his weight with medical personnel. He did not show that the weight loss impaired his health; in fact, as the Magistrate Judge observed, Northup is 5 feet 10 inches tall, and so a weight of 240 pounds placed him in the "obese" category as defined by the National Heart Lung and Blood Institute. The Magistrate Judge stated that "Northup's bare and conclusory contention that the food must be inadequate because he has experienced a weight loss averaging less than one pound per month fails to show that he has been denied the minimal civilized measure of life's necessities."

In his objections, Northup says that in Marquez v. Quarterman, 652 F.Supp.2d 782 (E.D.Tex. 2009), the court held that the plaintiff had suffered "irreparable harm" through the loss of only 13 pounds. That case involved the denial of dentures, and the plaintiff there complained about an inability to chew food resulting in stomach cramps, spastic colon, and GERD (gastro-esophageal reflux disorder) which had resulted in the loss of 13 pounds. The district court did not conclude that the loss of 13 pounds constituted "irreparable harm," only that it represented sufficient evidence to sustain Marquez's claim of deliberate indifference to his serious medical needs, including his need for dentures as well as the other medical claims he raised.

In the present case, by contrast, Northup has not shown any medical needs, nor that he even complained to medical personnel about his weight loss. As the Magistrate Judge noted, in Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998), the Fifth Circuit expressed doubts that an inmate who missed 50 meals in five months, resulting in the loss of 15 pounds (an average of three pounds per month), "was denied anything close to a civilized measure of life's necessities." Northup's claim is more akin to that in Talib than to Marquez, and lacks merit for the same reason. His objection on this basis is without merit.

With regard to the sanitation of the food, Northup complained that he has "seen food dangling from the service area" and that inmates can inspect trays for cleanliness at the Michael Unit but cannot do so at the Beto Unit. The Magistrate Judge observed that although Northup testified

4

that he has eaten three meals a day at the Beto Unit for two and a half years, he does not allege that he has ever suffered any harm or illness as a result of the allegedly unsanitary conditions. The Magistrate Judge thus concluded that Northup's claim lacked merit, citing Flowers v. Dent, 21 F.3d 1109, 1994 WL 171707 (5th Cir., April 29, 1994) (affirming dismissal as frivolous of complaint of inadequate food and unsanitary kitchen facilities where no harm was shown).

In his objections, Northup asserts that inmates do not have to await a "tragic event" such as food poisoning in order to obtain relief for "human basic needs such as food," and that the fact that the foods are "unwholesome and unsavory" effects the appetite and desire to consume such food. The Magistrate Judge correctly determined that Northup's claims lacked merit due to the lack of showing of harm, as the Fifth Circuit stated in Flowers; Northup concedes that he has eaten over two thousand meals at the Beto Unit, but has never once suffered any harm as a result of the allegedly unsanitary conditions there. The fact that prison food is unappetizing or unattractive does not amount to a constitutional violation. LeMaire v. Maass, 12 F.3d 144, 156 (9th Cir. 1993); Mahmoud v. Bowie, 234 F.3d 29, 2000 WL 1568178 (5th Cir., September 14, 2000). Northup's objections on this point are without merit.

Turning to the showers, Northup asserts that the Magistrate Judge erred because he, Northup did show a substantial risk of harm in the showers at the Beto Unit because other inmates were engaging in violent sex acts and gang meetings. As the Magistrate Judge stated, Northup did not allege that he had ever been harmed in the shower, and in fact testified that he had not been to the shower at the Beto Unit since 2009. The Magistrate Judge stated that Northup had an alternative means of personal hygiene, in that he said that he bathed in his sink, and in a sick call request of January 25, 2011, Northup stated that "I shower / bather daily."

In addition to the lack of harm, the Magistrate Judge stated that Northup's claim on this point failed because he sued only the persons who denied his grievances, and the fact that a prison official denies a grievance does not form the basis for a Section 1983 claim. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Northup's objections do not address this conclusion.

5

With regard to the dayroom space, Northup complained that the dayrooms had 120 seats but the wings have 198 inmates, meaning that 78 prisoners have to stand when the whole wing is in the dayroom. Northup also complained that the seats were claimed by "gang members," and that on one occasion, he sat down and a gang member slapped him and told him to "get off my bench." The Magistrate Judge concluded that Northup's allegations in this regard failed to show that he had been subjected to cruel and unusual punishment in that he did not show a deprivation of the civilized measure of life's necessities, but only "mere discomfort or inconvenience," from which the Eighth Amendment does not offer protection. Furthermore, the Magistrate Judge noted that Northup had only sued the individuals who denied his grievances on this issue, and he has no liberty interest in having grievances resolved to his satisfaction.

In his objections, Northup says that "it's obvious that per the Magistrate Judge, the gang members who control these dayrooms are the new standard of building tenders and turnkeys that Ruiz v. Johnson, 37 F.Supp.2d 855, 915-927 (S.D.Tex. 1999) [*reversed* 243 F.3d 941 (5th Cir. 2001)] outlawed, and enforced humane conditions of confinement." This oblique statement fails to address the Magistrate Judge's conclusion that Northup's claim did not set out a violation of the Eighth Amendment, nor that Northup had only sued persons who had denied his grievances, against whom he lacked a cognizable claim. Northup's objection on this point is without merit.

With regard to the square footage in the cells, Northup complained that a two-man cell was only 54 square feet, that he was denied equal protection because cells on other units are larger, and that gang members are housed with non–gang members, allowing the gang members to exercise control. The Magistrate Judge cited Rhodes v. Chapman, 452 U.S. 337, 346 (1981) in holding that 54-square-foot cells are not themselves unconstitutional. The Magistrate Judge also rejected Northup's equal protection argument, citing Muhammed v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992), and determined that the fact that gang-affiliated inmates may be housed with inmates without such an affiliation was not a constitutional violation. Wolters v. Federal Bureau of Prisons, civil action no. 08-CV-0837, 2008 WL 4558346 (W.D.La., September 19, 2008, *affirmed in part and*

6

*vacated in part on other grounds* 352 Fed.Appx. 926, 2009 WL 3698037 (5th Cir., November 5, 2009).

In his objections, Northup says that when a state agency such as TDCJ treats inmates differently for long periods of time, such as over a two-year consecutive confinement, "size and space mental disorientation and a lack of personal worth sets in to know that for some apparent reason, the TDCJ is treating plaintiff arbitrarily and capriciously in his housing compared to other systematic [sic] TDCJ inmates, also to the fact that the Magistrate Judge is allowing such gang members to be housed together in such confined quarters with non-gang affiliated inmates as plaintiff."

As the Magistrate Judge said, the Supreme Court has held that the double-celling of inmates in relatively small cells is not a constitutional violation. Rhodes, 452 U.S. at 346. Northup has not shown an equal protection violation because he has not shown that he is being treated differently from other inmates similarly situated to him, i.e. other inmates at the Beto Unit. Muhammed, 966 F.2d at 903. Northup does not state any factual or legal objection to the Magistrate Judge's conclusion that he failed to show a constitutional violation in the fact that he had been housed with inmates connected to gangs. These objections are without merit.

Northup next complains that he had to "shave his face in the toilet" from January 25 through February 15, 2010, because his sink was broken and drained directly onto the cell floor. Je filed a grievance, and the response was that a work order had been issued to fix the sink. In his Step Two appeal, he complained that the only reason his sink was fixed was because he had to file a grievance. The response was that the work order had been issued and his sink was fixed on February 22. 2010.

In January of 2011, Northup filed a grievance complaining that the light fixture in his cell did not work. The response was that a work order had been generated to address the problem. In his Step Two grievance, Northup complained that the Step One response showed that the problem

7

had not yet been fixed, and the Step Two grievance said that the Step One grievance had addressed the problem.

Northup testified that he was suing two wardens and two regional grievance supervisors for this claim, the officials who had denied his Step One and Step Two grievances. The Magistrate Judge stated that Northup had no liberty interest in having grievances resolved to his satisfaction, and that he did not show that he had suffered from deliberate indifference; the answers to his grievances were responsive to his complaints, and he did not show that he failure to fix the lighting and plumbing in a manner which he considered timely was the result of deliberate indifference rather than simple negligence or lack of due care.

In his objections, Northup poses the hypothetical question of whether the Magistrate Judge allows the fixtures in his house to go weeks or months without repair, or whether Northup, as an inmate, is "less than human." These objections are manifestly inappropriate and fail to address the Magistrate Judge's conclusions, and are without merit.

Northup complains that the cells at the Beto Unit do not have "hot running water," while other TDCJ units do offer this amenity. The Magistrate Judge stated that Northup had failed to show an equal protection because he is not similarly situated to inmates housed at other units, as explained by the Fifth Circuit in Muhammed, 966 F.2d at 903, and that prisoners do not have a constitutional right to receive hot water. Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986).

In his objections, Northup says that he is objecting to the "continued assumption" that he should be treated differently compared to "other systematically situated inmates on other TDCJ Agency units." This argument is contrary to the Fifth Circuit's holding in Muhammed and is without merit.

Northup complained that the Beto Unit was "unconstitutionally understaffed." He testified that he was suing the officials who denied his grievances regarding this situation. The Magistrate Judge determined that Northup lacked a liberty interest in having his grievances resolved to his satisfaction, and that Northup failed to show that any of the named defendants affirmatively

8

implemented a policy of understaffing or that they failed to take or even could take reasonable steps to alleviate the problem, citing Hinojosa v. Johnson, 277 Fed.Appx. 370, 2008 WL 1924216 (5th Cir., May 1, 2008). The Magistrate Judge also stated that Northup had failed to show any harm from his allegation that wings were sometimes left unsupervised and that evidence in a case called Hazel v. Bell, civil action no. 9:08cv216, 2010 WL 1038743 (E.D.Tex., January 8, 2010, *Report adopted by* 2010 WL 1038733 (E.D.Tex., March 18, 2010, no appeal taken), showed that TDCJ officials were trying to alleviate the staffing problem through such means as paying bonuses to newly hired guards who accepted employment at particularly understaffed unit. Furthermore, evidence of understaffing is not by itself proof of an official policy absent a showing that more complete staffing and funding is available but the prison policymakers intended not to adequately staff and fund the prison. Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D.Tex. 1987), *aff'd* 851 F.2d 359 (5th Cir. 1988).

In his objections, Northup complains that the Magistrate Judge allows the Beto Unit to impose a "state created health and safety risk" by allowing a 1 to 198 officer-to-inmate ratio on the win, and by "allowing undocumented fights, assaults, and gang violence to transpire without remedy." He did not address the Magistrate Judge's conclusions that he could not sue the named defendants for denying his grievances, nor that he had failed to show an official policy of understaffing. Nor did Northup show any harm from the alleged understaffing; although he referred to "undocumented fights, assaults, and gang violence," he did not allege that he had participated in or been a victim of any such activity. His objections on this point are without merit.

Northup complains that the electrical outlets in the cells are within 18 inches of the sink, which he says poses a safety hazard in that it exposes Northup and other inmates to the risk of shock. He also complains that the outlets are not GFCI (ground fault current interruption" trip-reset outlets and so there is no safety mechanism to prevent the risk of harm. He testified that he once accidentally splashed water from the sink into an outlet, causing sparks to shoot out.

9

The Magistrate Judge determined that the Eighth Amendment did not require that prisons meet fire and safety codes, referring to Johnson v. Texas Board of Criminal Justice, 281 Fed.Appx. 319, 208 WL 2337324 (5th Cir., June 5, 2008), *citing* Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir., *modified in other respects* 688 F.2d 266 (5th Cir. 1982) *and* Giovanni v. Lynn, 48 F.3d 908, 912-13 (5th Cir. 1995). In Johnson, the Fifth Circuit held that the plaintiff did not allege that anyone had been injured by any type of fire or that the unit was built from flammable materials or was otherwise particularly susceptible to fire, and so the allegations in that case did not state a valid claim. Similarly, the Magistrate Judge concluded that the Eighth Amendment did not require compliance with building codes in the present case and Northup did not allege that he suffered any actual injury.

In his objections, Northup says that he is objecting "based on the fact that it's obvious that until a physical harm by electric shock happens to the plaintiff on Beto, if he lives through such, then redress may be afforded." This objection fails to show any constitutional requirement that prisons adhere to fire and safety codes, nor that Northup has suffered any constitutionally cognizable injury. His claim on this point is without merit.

Next, Northup complained that he suffered from hepatitis C and tuberculosis, but inmates with communicable diseases such as these are housed with inmates who are not so infected, putting the healthy inmates at risk of exposure. As a result, Northup says, these cellmates "enforce their rules" on him. He complained that he was housed for five weeks, from April 19 to May 25, 2010, with an inmate named Oten, a member of the Crips gang, and Oten "enforced rules on him" by prohibiting Northup from coming to his own cell from 7 a.m. to 10 p.m. When he finally complained to prison officials on May 25, he was asked if he was refusing housing and then locked up. He filed a request for an offender protection investigation, but then signed a waiver on the promise that he would be moved. When Northup was moved, however, he was placed in a cell with another gang member.

Northup explained that his legal claims in this regard were that other inmates should not be exposed to communicable diseases and that his cellmate would not allow him to return to his cell. The Magistrate Judge concluded that Northup lacked standing to assert the rights of the other inmates with whom he might be housed, and that the general prohibition against inmates exercising control over other inmates does not arise from the Constitution or laws of the United States, but from the consent decree in Ruiz v. Estelle, 503 F.Supp. 1265 (S.D.Tex. 1980), *aff'd in part and vacated in part* 679 F.2d 1115 (5th Cir.), *amended in part and vacated in part* 688 F.2d 266 (5th Cir. 1982). However, as the Magistrate Judge explained, violations of a consent decree cannot form the basis of a Section 1983 claim. Green v. McKaskle, 788 F.2d 1116, 1122-23 (5th Cir. 1986). Thus, the fact that Northup may have subject to "rules" imposed by Oten did not give rise to Section 1983 liability on the part of the defendants.

In addition, the Magistrate Judge stated that Northup had failed to show that any of the named defendants were deliberately indifferent to his safety. The evidence showed, and Northup did not dispute, that when he complained about being in danger, a life endangerment investigation was begun. He told prison officials that he was in danger from his cellmate, and his cellmate was moved from J Wing to K Wing. When Northup complained two weeks later that he was in danger, another investigation was begun. The fact that Northup did not receive the precise relief he wanted, in the form of a move to the south side of the building, did not show that the prison officials were deliberately indifferent to his safety.

In his objections, Northup complains that he and other non-gang inmates have no way to defend themselves against groups of gang inmates. He states that under Texas law, inmates with similar health conditions, such as HIV or tuberculosis are supposed to be housed on the same unit or the same confining cells. Whether or not the blanket statement that non-gang inmates cannot defend themselves against gang inmates is true, Northup has not shown that any of the named defendants were deliberately indifferent to his safety. Even if the housing assignments for inmates violated state law, the Fifth Circuit has held that violations of state law do not, without more, amount

11

to deprivations of federal rights cognizable under 42 U.S.C. §1983. Brown v. Sudduth, 675 F.3d 472, 478, *citing* Miller v. Carson, 563 F.2d 757, 760 n.7 (5th Cir. 1977). Northup has failed to show a constitutional violation, nor did he challenge the Magistrate Judge's conclusion that he lacked standing to assert the rights of other inmates. Northup's objections in this regard are without merit.

In his last claim, Northup asserted that gangs were in control of "all aspects of the Beto Unit," indicated that they are allowed to conduct operations such as drug and tobacco trafficking, make deadly weapons, control the dayrooms and showers, control the food, and control non-gang inmates assigned to the cells of gang members.

He pointed to an incident in which he was celled with an inmate named Laday, in August of 2010. Northup complained that Laday enforced his rules upon him and had deadly weapons in his possession. TDCJ records showed that Northup wrote a letter on August 26, 2010, saying that he was in fear for his life because he kept getting housed with gang members who are "using their authority to control inmates like me." An offender protection investigation was begun that same day and Northup told the investigator, Culpepper, that he would sign a waiver if he was moved to the south side of the building. The investigator concluded that he could not substantiate Northup's allegations. The security threat group officer, Vasquez, sent an inter-office communication to Culpepper saying that while Laday was in fact a confirmed member of the Bloods, there was no specific evidence to confirm Northup's claim that he was being extorted. Northup was told that he would be moved to Cell O-117 and that he could still sign a waiver if he wanted to, but Major Parker determined that there was no evidence to support Northup's allegations.

The Magistrate Judge stated that Northup failed to set out a constitutional claim because he did not show any harm, citing Wolters v. Federal Bureau of Prisons and Bell v. Wathen, slip op. no. 07-10609, 2008 WL 1743887 (5th Cir., April 14, 2008) (stating that "Bell's claim for damages is barred because he does not argue that he suffered an actual physical injury resulting from the prison officials' purported failure to protect").

12

Similarly, Northup complained about an incident on January 3, 2012, when he had a confrontation with an inmate named Adair, whom he describes as a member of the Aryan Brotherhood. He says that Adair taunted him because he, Northup, has to wear diapers at night for a medical condition, and when Northup responded in kind, Adair hit him. Northup stated that he filed a life endangerment complaint, which was denied, but his housing assignment was changed.

Nine days later, on January 12, Northup states that he was confronted by four members of the Aryan Brotherhood, who threatened him by saying that if he ever "disrespected" the Aryan Brotherhood again, he would leave the unit in a body bag. He filed another life endangerment request, which was denied by Major Parker on January 27, 2012. Three weeks later, Northup signed his amended complaint, stating that he was not in general population; however, he said at the evidentiary hearing that the Aryan Brotherhood could now make him do whatever they wanted.

After noting that it was not clear that Northup had exhausted his administrative remedies on this complaint, which had occurred just three weeks prior to the signing of the amended complaint, the Magistrate Judge stated that Northup had again failed to show that any harm had come to him as a result of the alleged failure to protect. In addition, Northup acknowledged that an investigation was conducted, although he disagreed with the result of that investigation. *See* Parker v. Currie, 359 Fed.Appx. 488, 2010 WL 10924 (5th Cir., January 4, 2010) (inmate complained that his life was in danger and prison officials conducted numerous investigations, determining the claims to be baseless, but nonetheless moved the inmate to various housing assignments; the district court dismissed the claims as frivolous, and the Fifth Circuit dismissed the appeal as frivolous).

Although Northup complained that Laday had possessed weapons, the Magistrate Judge determined that he had shown no harm as a result of this, nor that the prison officials were deliberately indifferent for covering the windows with wire mesh that inmates allegedly used to make these weapons. The Magistrate Judge stated that a number of Northup's claims about the gangs were rehashes of his prior allegations, and that Northup did not show that any of the named defendants were responsible for his confrontation with Adair. Finally, the Magistrate Judge determined that

13

Northup's claims concerning violations of TDCJ rules and regulations were not cognizable in a Section 1983 civil rights lawsuit.

In his objections, Northup states that "it is obvious" that conditions at the Beto Unit violate federal criminal statutes, state law, and 28 U.S.C. §509B, which concerns the power of the U.S. Attorney General to enforce human rights laws, including laws against genocide, torture, war crimes, and the use or recruitment of child soldiers. As the Magistrate Judge explained, Northup has no constitutional right to have someone else criminally prosecuted, and alleged violations of state laws do not rise to the level of constitutional violations. 28 U.S.C. §509B has no applicability in the present case. These objections are without merit.

Next, Northup complains that he must await a "tragic event" before relief will be afforded. In Bell v. Wathen, the Fifth Circuit stated that "Bell's claim for damages is barred because he does not argue that he suffered an actual physical injury resulting from the prison officials' purported failure to protect." The same circumstance exists in this case; although Northup complains of a failure to protect, he fails to allege any injury. In addition, the evidence shows that Northup's complaints that he is in danger are investigated, even if the investigation does not reach a conclusion to his liking, and he has been repeatedly moved to different housing assignments in response to his complaints of danger. He has thus failed to show that any of the defendants have been deliberately indifferent to his safety, nor that he is incarcerated "under conditions posing a substantial risk of serious harm."

The Supreme Court has held that "it would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." Farmer v. Brennan, 511 U.S. 815, 845, *citing* Helling, 509 U.S. at 33. The fact that Northup has not shown harm does not prevent him from seeking injunctive relief; however, his speculative assertions are not sufficient to sustain a claim for such relief, and in any event, the evidence shows that the prison officials were not deliberately indifferent to his claims of

danger, but responded to these complaints by investigations and housing reassignments. His objection on this point is without merit.

Similarly, Northup has not shown a likelihood of future harm so as to give him standing to seek injunctive relief. As the Magistrate Judge explained, Northup's speculation that if he is released in to general population in the future, and if the Aryan Brotherhood gives him orders, and if he refuses to comply, this could be construed as "disrespect, thus placing him in danger, did not amount to a showing of a likelihood of future harm sufficient to justify a grant of injunctive relief. *See* Brown v. Federal Bureau of Prisons, 285 Fed.Appx. 173, 2008 WL 2831252 (5th Cir., July 23, 2008) (inmate seeking injunction presenting him from transferred to prisons "where gangs and Leavenworth prisoners are" failed to show a likelihood of future harm).

Northup goes on to complain that on May 20, 2012, there were riots at the Beto Unit between two gangs, the Texas Syndicate and the Tango Blast, which resulted in stabbings and an administrative lockdown between May 21 and June 14, 2012. Even were this incident part of his complaint, which it is not, Northup has failed to show that the prison officials were deliberately indifferent; he concedes that they responded to the incident by imposing a lockdown, a normal and appropriate response to a riot. *See, e.g.,* Arias-Maldonado v. Tallahatchie County Correctional Facility, slip op. no. 2:08cv165, 2008 WL 3539735 (N.D. Miss., August 11, 2008);

In his conclusion to his objections, Northup objects to the receipt of evidence without his getting a copy, not allowing him to submit other evidence, and not considering "the totality of the circumstances." The evidence to which Northup objects is his own prison records, which he gave permission to the Court to review at the evidentiary hearing. Nothing in the record shows that Northup was unable to file additional evidence; he filed an amended complaint on March 2, 2012, which has been reviewed by the Court. The review of Northup's claims encompassed a review of the totality of the conditions of confinement, and Northup has failed to show that his rights under the Constitution or laws of the United States were violated by the totality of the circumstances of his confinement. Northup's objections are without merit.

Conclusion

The Court has conducted a careful *de novo* review of the pleadings and testimony in this case, as well as the Report of the Magistrate Judge and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 44) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. Because the Court has determined that the lawsuit is frivolous in its entirety, the issue of whether unrelated claims and parties should be severed into separate causes of action under Rules 20 and 21, Fed. R. Civ. P., need not be considered. It is further

ORDERED that a copy of this opinion shall be sent by the Clerk to the Administrator of the Strikes List for the Eastern District of Texas. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**So ORDERED and SIGNED this 9th day of July, 2012.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**